1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| GUY M. BULLIS, individually,<br><br>                 Plaintiff,<br><br>v.<br><br>MICHAEL FARRELL, an individual,<br>and THE LAW OFFICE OF MIKE<br>FARRELL, PLLC, a professional<br>limited liability company,<br><br>                 Defendants. | CASE NO. 3:21-cv-5839<br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Guy M. Bullis, by and through his undersigned attorney, brings this complaint for breach of fiduciary duty, legal malpractice, breach of contract, and violations of the Consumer Protection Act against the Defendants, Michael Farrell and the Law Office of Mike Farrell, PLLC, and alleges the following:

## **PARTIES**

1.      Plaintiff, Guy M. Bullis ("Bullis"), is, and at all times relevant herein, was a citizen of Pierce County and of the state of Washington.

COMPLAINT - 1

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1     2.      Defendant Michael Farrell ("Farrell"), is, and at all times relevant herein, was a

2 citizen of the state of Mississippi, an attorney licensed to practice law in the state of Mississippi

3 whose primary area of practice was in employment law, and he conducted business at the Law

4 Office of Mike Farrell, PLLC, with its principal place of business located at 210 E. Capital

5 Street, Suite 1088, Jackson, Mississippi 39201.

6     3.      Defendant, the Law Office of Mike Farrell, PLLC, is, and at all times relevant

7 herein, was a citizen of the state of Mississippi and is a law firm with its principal place of

8 business located at 210 E. Capital Street, Suite 1088, Jackson, Mississippi 39201.

9 

**JURISDICTION AND VENUE**

10     4.      This Court has jurisdiction to hear this case on diversity of citizenship under 28

11 U.S.C. § 1332(a)(1) as Plaintiff and Defendants are citizens of different states and the amount in

12 controversy is in excess of $75,000, exclusive of interest and costs.

13     5.      The venue of this action is proper under 28 U.S.C. § 1391(b)(2) because the acts

14 giving rise to the claim took place in this judicial district. Likewise, the Defendants transact

15 business within this judicial district.

16 

**STATEMENT OF FACTS**

17     6.      On or about January 16, 2015, Bullis received an email from Farrell addressed to

18 "Dear former CSC employee" and captioned "Solicitation Material" regarding a planned lawsuit

19 against Bullis' former employer, Computer Sciences Corporation ("CSC"), which included an

20 attorney engagement agreement.

21     7.      In Farrell's January 16, 2015, email to Bullis, Farrell stated that the "original plan

22 was to file suit today[,]" but due to some "last minute interest in the litigation[,]" there would be

23

24

COMPLAINT - 2

a delay of filing the suit "for another week." Farrell stated that "25 former CSC employees have signed up" and that he expected "another 15 to sign up shortly."

8.    Under the material terms of the attorney engagement agreement:

8.1    The services of Mike Farrell, PLLC ("the attorney"), would be retained by the client to pursue claims against CSC for breaching an employment offer letter that quoted an hourly rate. The lawsuit was to recover the hourly rate for all hours worked by the employee prior to June 1, 2012.

8.2    The objective of the lawsuit stated that the attorney would file suit in New Orleans, Louisiana, on behalf of the client and other CSC employees who joined the litigation. The agreement further stated that Louisiana would be the venue because the state's law provided for a 10-year statute of limitations, a provision for legal fees, and a penalty of three-months pay for failure to pay wages when due.

8.3    In the agreement, the client agreed that the attorney was permitted to represent other CSC employees in the same suit; that if a conflict arose in the representation of multiple parties, the attorney agreed to disclose such conflict; and, that the attorney may associate local counsel in Louisiana at the attorney's expense and of the attorney's choosing.

8.4    The contingency fee agreement for the attorney's services was 40% of the recovery of damages for back pay, interest, and/or penalties. Furthermore, a judgment of the court or a settlement agreement for a separate award of attorney fees apart from damages will be retained by the attorney in addition to the 40% contingency fee.

8.5    The attorney agreed that the case would not be settled without the client's approval and should CSC make an offer "that is some but not all of the plaintiffs," a conflict would arise in the attorney's continued representation of all the plaintiffs. In such an event, the

COMPLAINT - 3

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

attorney had the option of withdrawing from the representation "of those in the minority," who would "then have the option to retain other counsel and continue with the case."

8.6     Depending on the number of former CSC employees who joined in the lawsuit, the agreement provided for a reduction in "legal" fees.

8.6.1   If 10 people join the suit, the attorney's out-of-pocket expenses will come out of the attorney's expenses.

8.6.2   If "20 more people" join the suit, then the attorney's "40% fee will be reduced by the amount of legal fees identified as a separate amount in the settlement or judgment."

8.6.3   If 30 people join the suit, the attorney's percentage would be reduced to 35%.

8.6.4   If 35 people join the suit, the attorney's percentage would be reduced to 31%.

8.6.5   If 40 people join the suit, the attorney's percentage would be reduced to 27%.

9.     On or about January 22, 2015, Bullis received an email from Farrell addressed to "Dear Client" with instructions on making a written demand on CSC for wages due. Farrell stated that the written demand was required in "order to collect legal fees and the penalty under Louisiana law."

10.     On or about February 6, 2015, Bullis signed Farrell's attorney engagement agreement and emailed the agreement to Farrell.

11.     On or about February 17, 2015, Bullis received an email from Farrell addressed to "Dear former CSC employees." Attached to Farrell's email was a copy of a civil complaint. The

COMPLAINT - 4

complaint was captioned *Steve Rose et al v. Computer Sciences Corporation*, Farrell stated that he hoped "to file it on Friday [February 20, 2015]."

12.     On or about March 13, 2015, Farrell filed a civil complaint for breach of contract in the United States District Court, Eastern District of Louisiana, captioned *Steve Rose et al. v. Computer Sciences Corporation* ("*Rose*"), Case No. 2:15-cv-00813-SM-KWR ("Lawsuit No. 1"). Bullis was a named plaintiff in Lawsuit No. 1.

12.1     Lawsuit No. 1 was based on diversity of citizenship under 28 U.S.C. § 1332.

12.2     In Lawsuit No. 1, Bullis was identified as a resident of DuPont, Washington.

12.3     In Lawsuit No. 1, Farrell represented one other Washington citizen, Kenneth Alford ("Alford"). Alford was a named plaintiff and he was identified as a resident of Tacoma, Washington.

13.     On or about May 20, 2015, Bullis received an email from Farrell addressed to "Dear clients and friends," wherein Farrell conveyed to Bullis and to Farrell's other CSC clients that CSC's attorney requested a stay of proceedings pending the resolution of CSC's appeal to the Fourth Circuit Court of Appeals ("the Fourth Circuit") in the consolidated cases of *Richelle and Rhodes v. CSC* ("*Richelle* and *Rhodes*")*,* Fourth Circuit Court of Appeals, Nos. 14-2366 and No. 14-2376, respectively.

13.1     In the May 20, 2015, email to Bullis from Farrell, Farrell stated that he was inclined to agree to a stay, and if "the Fourth Circuit affirms the trial court's decision…it would then essentially be a matter of getting your time records from CSC and calculating the back pay that you are owed."

COMPLAINT - 5

13.2     Farrell was an attorney of record for the appellees in *Richelle* and *Rhodes* and he was one of several attorneys who argued the case before the Fourth Circuit Court of Appeals.

13.3     Farrell failed to inform Bullis that he was the lead attorney in *Rhodes*, U.S. District Court, Southern District of Mississippi, Jackson Division, Case No. 3:13-cv-00214.

13.4     The plaintiffs' claims against CSC in *Richelle* and *Rhodes* were based on the same claim as Bullis' claim against CSC in Lawsuit No. 1 for breaching an employment offer letter that quoted an hourly rate.

13.4.1     *Richelle* originated in federal court in Florida. The district court applied Florida's choice-of-law rules and determined that Florida law governed the case. CSC did not dispute the district court's choice of law determination on appeal.

13.4.2     On the parties' cross-motions for summary judgment in *Richelle*, the Florida district court concluded that the offer letters unambiguously provided for hourly wages rather than fixed salaries, and the court granted summary judgment in favor of the *Richelle* plaintiffs.

13.4.3     *Rhodes* originated in federal court in Mississippi. The district court applied Mississippi's choice-of-law rules and determined that Virginia law governed the case because CSC's headquarters were located in Virginia. CSC disputed the district court's choice-of-law determination on appeal, arguing that Kuwaiti law should govern since the employees were stationed in Kuwait for the majority of their time overseas.

13.4.4     On the parties' cross-motions for summary judgment in *Rhodes*, the Mississippi district court concluded that the offer letters unambiguously provided for

COMPLAINT - 6

hourly wages rather than fixed salaries, and the court granted summary judgment in favor of the *Rhodes* plaintiffs.

            13.4.5        In *Rhodes*, the Fourth Circuit affirmed the Mississippi district court's determination that Virginia law governed the case under Mississippi's "center-of-gravity" doctrine.

            13.5    On or about May 2, 2016, the Fourth Circuit affirmed the district courts' grant of summary judgment in favor of the *Richelle* and the *Rhodes* plaintiffs, holding that the offer letters unambiguously provided for hourly wages rather than fixed salaries.

            13.6    In agreeing to stay the proceedings in *Rose* pending the resolution of CSC's appeal to the Fourth Circuit in *Richelle* and *Rhodes*, Farrell failed to negotiate with CSC to toll the statute of limitations in Lawsuit No. 1.

      14.    On or about May 24, 2016, Bullis received an email from Farrell addressed to "Dear Client and Friends." Farrell informed Bullis and the other CSC clients about the favorable decision from the Fourth Circuit. Farrell stated that "the first order of business is to ask CSC to produce records showing the hours that you worked and the compensation that you received. By my calculations, each CSC employee should be able to recover about $75,000 for every year they worked for CSC plus another $50,000 in the penalty under Louisiana law."

      15.    On or about June 30, 2016, Bullis received an email from Farrell addressed to "Clients and Friends," wherein Farrell stated that he would attempt to "short circuit most of the discovery by filing an early motion for summary judgment." Farrell went on to state, "The big issue is whether the decision of the Virginia court will be binding on the federal court in New Orleans. The legal term is collateral estoppel. Google that term if you cannot sleep some night."

COMPLAINT - 7

1   16.     On or about October 28, 2016, Bullis received an email from Farrell addressed to

2   "Dear clients and friends," wherein Farrell informed Bullis and the other CSC clients that CSC

3   had propounded discovery requests to 72 of them. Farrell went on to state that "[w]e want to get

4   a summary (quickie) judgment from the court…by the end of 2016." Farrell further reported in

5   the email that in *Rhodes,* the Fourth Circuit affirmed the district court's judgment of $350,000,

6   and that "[t]his week, the district court added another $100,000 in prejudgment interest."

7   17.     On or about February 9, 2017, Bullis received an email from Farrell addressed to

8   "Dear Clients." In the email, Farrell stated, "I had hoped to complete discovery by now but I was

9   waylaid by other matters. I am clearing my desk now to devote fulltime to this case until we

10  complete our discovery responses by late February. I will then work full time on our motion for

11  summary judgement [sic]. Several of you have called. It is difficult to give you a personal status

12  report over the phone. The best way to communicate is by phone [sic]. Please send an email if

13  you have a particular question."

14  18.     On or about March 30, 2017, Bullis received an email from Farrell addressed to

15  "Clients." In the email, Farrell attached a link to CSC's motion to dismiss and stated, "CSC is

16  requesting that 57 of you be dismissed completely and that 37 of you have your claims limited."

17  Farrell further stated, "[w]e are researching whether (1) the applicable statute of limitations is

18  Virginia's 5-year statute of limitations and (2) CSC can be prevented (estopped) from raising the

19  statute of limitations as a defense."

20  19.     On or about April 14, 2017, Bullis received an email from Farrell addressed to

21  "Clients." In the email, Farrell stated:

22          I wanted to give you some good news based on our continuing research on the statute of
            limitations. Even if the court in Louisiana dismisses your case based on the statute of
23          limitations, we believe that we can refile the suit in Virginia for most of you.

24

COMPLAINT - 8

Virginia has a five year [sic] statute of limitations for a breach of contract. Virginia also has a saving statute which means that the time the case was pending in New Orleans would not count against your five years under Virginia law.

Virginia law would not allow us to collect legal fees or the 30% penalty, but we should be able to recover back pay.

20.     On or about June 30, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated:

[T]he court will most likely grant CSC's motion to dismiss any claims that predate March 2012 based on a Louisiana statute of limitations on wages. We will refile those dismissed claims in federal court in Virginia while the remaining portion of the Louisiana suit proceeds to trial. That suit will be limited to claims for wages due between March and June 2012. The big issue is whether the Louisiana statute (that allows for legal fees and a penalty of 90-days [sic] pay) applies to everybody. CSC will argue that it only applies to work done in Louisiana or to residents of that state. Based on our research, we feel that you have a good chance of collecting the penalty. For most of you, 90 days [sic] pay with uplifts should be about $35,000.

Filing in Virginia has some advantages and has some challenges. Virginia has a five-year statute of limitations on claims for breach of a written contract. In addition, Virginia has a so-called savings statute which means that the time lawsuit was pending in Louisiana will not count against five years in Virginia. That is the easy part.

The tricky part is that under Virginia law, the contract is construed by the law of the place where you signed it or where it was performed. Most of you signed your offer letter while you were already overseas in Iraq or Kuwait or Afghanistan. If the issue involves the interpretation of the contract, then the law of the state or country where you signed the offer letter will governs [sic]. On the other hand, if the issue is the performance of the contracts, the law of the place where the contract was performed will govern. Just to complicate things further, the contract was performed in two places. You performed your end of the contract overseas but CSC performed its end of the contract in Virginia where it prepared your pay checks and deposited your checks.

We will ask the court to apply Virginia law based on where CSC performed the contract. If the court applies the law of Afghanistan or Kuwait or Iraq, then the case will be dismissed. Virginia has a separate statute of limitations that says if a suit is untimely where the contract was signed or performed then it is also barred in Virginia.

All of this means that we will have to thread a few needles to win in Virginia but we are committed to going the distance for you.

COMPLAINT - 9

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

21.     On or about July 7, 2017, in Lawsuit No. 1, U.S. District Court Judge Susie Morgan granted CSC's motion for partial summary judgment on those plaintiffs' claims that had prescribed under Louisiana Civil Code article 3494, which provides for a three-year prescriptive period (statute of limitations) for their unpaid wage claims.

21.1    Louisiana Civil Code article 3494 provides in relevant part: "The following actions are subject to a liberative prescription of three years: (1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board[.]"

21.2    Farrell failed to oppose CSC's motion for partial summary judgment, nor did he deny that the three-year prescriptive period under Louisiana article 3494 applied in the case or that a number of plaintiffs' claims had prescribed under Louisiana law. Instead, he urged the Court to dismiss the prescribed claims without prejudice so that the claims may be refiled in Virginia, which provided for a more favorable period with respect to the statute of limitations.

21.3    The Court granted CSC's motion for partial summary judgment with prejudice.

21.4    The Court noted that the plaintiffs did not seek to transfer the dismissed claims to Virginia under 28 U.S.C. § 1404(a) because if such a transfer occurred, a Virginia district court would be bound to apply Louisiana's article 3494, which would lead to the same result in Lawsuit No. 1—dismissal of the plaintiffs' claims.

22.     On or about July 25, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated:

As I anticipated in my email on June 30, the court has now dismissed claims relating to hours worked prior to March 13, 2012. We plan to refile those claims in federal court in

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

Virginia as soon as possible. The Virginia statute of limitations should allow us to recovery [sic] wages back to March 2010.

If you want to participate in this new suit (and I encourage you to do so), respond **"Yes"** to this email and I will send you a new engagement agreement to sign.

23.     On or about July 28, 2017, Bullis received by email Farrell's attorney engagement agreement, titled "For Suit in Virginia against CSC." The engagement agreement provided in material part:

   23.1     The objective of the lawsuit was for the "attorney to file suit in federal court in Virginia on behalf of current and former CSC employees that [sic] join the litigation. The object [sic] of the suit is to recover the hourly rate for all hours worked prior to March 13, 2012. Claims for wages due after that day are being litigated in the case now pending in New Orleans, Louisiana."

   23.2     The client understood that the attorney would have to associate a Virginia attorney at the attorney's own expense.

   23.3     The client agreed that the attorney was permitted to represent other CSC employees in the same suit and that if a conflict arose in the representation of multiple parties, the attorney agreed to disclose such conflict.

   23.4     In the event of a recovery of damages, the client agreed to pay a contingency fee of 40% of the recovery of any damages and interest.

24.     On or about July 29, 2017, Bullis signed Farrell's attorney engagement agreement, titled "For Suit in Virginia against CSC," and emailed the agreement to Farrell.

25.     On or about September 29, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated that the district court's decision on "our" motion for

COMPLAINT - 11

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

summary judgment had been pending for several months and that he soon anticipated the Court's decision.

26.     On or about October 27, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "Judge Morgan rejected CSC's request to apply the laws of Iraq, Kuwait and Afghanistan. She stated she will apply the law of Virginia to the merits of the case. She also said we should receive a ruling by Monday on whether she will apply Louisiana remedies to the case. That is a huge deal because Louisiana law provides for a penalty of 90 days [sic] pay plus legal fees."

27.     On or about October 31, 2017, in Lawsuit No. 1, U.S. District Court Judge Susie Morgan denied CSC's motion for partial summary judgment as to controlling law. CSC argued that under Louisiana choice-of-law rules, the Court was required to apply the law of the southwest Asian country in which each plaintiff performed his or her contract, specifically, Kuwait, Afghanistan, or Iraq. Farrell opposed CSC's motion and argued that Virginia law should govern in the matter; however, he argued that with respect to remedies, the Court should apply Louisiana law, which provided for attorney fees and punitive damages.

27.1    The Court ruled that Virginia substantive law applied in the matter.

27.2    The Court ruled that plaintiffs may not seek damages under Louisiana law.

28.     On or about November 1, 2017, a settlement conference was held between the parties in Lawsuit No. 1 before Magistrate Judge Roby. Wanda Anderson Davis appeared for the plaintiffs. Farrell, however, failed appear.

29.     On or about November 1, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated that he participated by telephone in a settlement conference with Magistrate Judge Roby. Farrell continued in relevant part:

COMPLAINT - 12

CSC offered to settle everything for a total of $250,000. I cannot recommend a settlement for that amount.

Regardless of the outcome at trial, I would like to appeal the ruling that the Louisiana remedies do not apply.

I am still committed to the case. However, if there is any overwhelming ground support to accept the $250,000 [sic] I will certainly convey that sentiment to all concerned and make a recommendation accordingly. CSC may go up another $100,000 or so but will insist that as a part of any settlement that you waive any right to appeal this case.

I am holding to our position that any settlement would have to be without prejudice to you filing a new suit in Virginia and appealing the Louisiana remedies issue. CSC has said they will not settle if we insist on those conditions.

If you have any interest in a settlement at this point. Please advise me by email. Otherwise, I will continue to prepare for trial.

30.     On or about November 3, 2017, in Lawsuit No. 1, U.S. District Court Judge Susie Morgan issued a show cause order for Farrell to appear before the Court on November 8, 2017, to show cause why he should not be sanctioned for failing to appear for the settlement conference held on November 1, 2017.

31.     On or about November 3, 2017, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated:

Last June and July, I advised you that the court dismissed claims for hours worked prior to March 13, 2012. Hence, if you had already terminated your employment before that date, then your claim was dismissed entirely by the Louisiana court. The 37 employees (who had any hours worked after March 13) remained in the case. However, we still plan to re file [sic] your claims in Virginia. The engagement agreement for the Virginia suit states that "the object [sic] of the suit is to recover the hourly rate for all hours worked prior to March 13, 2012." I hope this information clarifies the situation.

32.     On or about November 5, 2017, in Lawsuit No. 1, U.S. District Court Judge Susie Morgan issued a decision on the parties' cross-motion for partial summary judgment. Both motions were opposed. Plaintiffs argued in their motion that CSC's offer letter and its Foreign Travel Letter ("FTL") unambiguously provided for an hourly rate of pay for plaintiffs' work

COMPLAINT - 13

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1   overseas. CSC argued, in relevant part, that its offer letter and FTL should be interpreted as to

2   provide for pay on a salary basis.

3          32.1   Applying Virginia law, the Court granted plaintiffs' motion for partial

4   summary judgment. The Court found that the offer letter and FTL, read together, unambiguously

5   provided for an hourly rate of pay for plaintiffs' work overseas.

6          33.   On or about November 8, 2017, in Lawsuit No. 1, a show cause hearing was held

7   before U.S. District Court Judge Susie Morgan. Farrell appeared for the plaintiffs. The Court

8   declined to sanction Farrell, but admonished him to attend all future court matters when

9   instructed to do so by the District Judge assigned to the matter.

10          34.   On or about November 8, 2017, Bullis received an email from Farrell addressed

11   to "Clients." In the email, Farrell provided a list of 37 people who worked for CSC "for some

12   weeks after March 12, 2012." Bullis was included in the list of 37 people.

13          35.   On or about November 8, 2017, Bullis received a second email from Farrell

14   addressed to "Clients." In the email, Farrell stated:

15          We have reached a tentative settlement agreement with CSC for $600,000 that I can
             recommend to you.
16
17          The upside is that the amount is more than 100% of the back pay at issue for the 12
             weeks between March 12 and June 6, 2012. One downsize [sic] is that CSC will require
18          that any person accepting the settlement to waive the right to join in a new lawsuit in
             Virginia. That will require some of you to make a personal decision about whether to
19          forgo [sic] this money in the hopes of collecting more in Virginia.

20          I am preparing a breakdown of how much each of you will receive. It might take a day or
             two for us to complete all of the calculations, but we will get it to you as soon as possible.

21          36.   On or about November 14, 2017, Bullis received an email from Farrell addressed

22   to "Clients." In the email, Farrell stated, "the number crunching is taking longer than

23

24
COMPLAINT - 14                                          ALANA BULLIS, PS
                                                        1911 Nelson Street
                                                        DuPont, WA  98327
                                                        Telephone (253) 905-4488
                                                        Facsimile (253) 912-4882

1   expected…please send your question in an email. I cannot take calls from 90 people about the

2   status of the case."

3       37.   On or about November 22, 2017, Bullis received an email from Farrell addressed

4   to "Clients." In the email, Farrell set forth his calculations as to the monetary damages certain

5   clients could expect to recover from the Louisiana lawsuit versus the Virginia lawsuit. Farrell

6   further stated, "If enough people don't sign up for the settlement in Louisiana, CSC can walk

7   away from the settlement agreement."

8       37.1   Bullis could expect to recover $18,973.24 from the Louisiana lawsuit

9   compared with $137,456.48 from the Virginia lawsuit.

10      37.2   Bullis emailed Farrell the same day, replying, "Mike, I want to go with

11  VA law."

12      38.   On or about November 22, 2017, Bullis received an email from Farrell addressed

13  to "Clients." In the email, Farrell stated he had "created some unnecessary confusion" in his

14  earlier email [in the day]. Farrell explained that he listed all of his CSC clients in three groups

15  and that Bullis was included in the first group ("First Group"), which Farrell considered as

16  joining "the lawsuit on 3/13/15 with the original filing of the complaint" in Lawsuit No. 1.

17      38.1   Farrell stated that Lawsuit No. 1 was to collect money prior to June 2,

18  2012.

19      38.2   Farrell further stated that the Court in Lawsuit No. 1 applied Louisiana's

20  three-year statute of limitations for an employment contract, so the First Group "could go back

21  three years from the date they joined [the original filing of the complaint]" to 3/13/12.

22      39.   On or about December 20, 2017, in the case *Joseph Strauch et al. v. Computer*

23  *Sciences Corporation,* No. 3:14-cv-956 (JBA) (D. Conn.) ("*Strauch*"), a jury found that CSC

24

COMPLAINT - 15

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1   failed to pay employees on an hourly basis; rather, CSC paid the employees a flat salary

2   regardless of how many hours they worked. The jury's verdict required CSC to compensate the

3   employees for their unpaid overtime hours.

4          39.1    In *Strauch*, CSC misclassified over 1000 Associate Professional and

5   Professional System Administrators as exempt from overtime under the federal Fair Labor

6   Standards Act, California law, and Connecticut law.

7          40.    On or about January 8, 2018, Bullis received an email from Farrell addressed to

8   "Clients." In the email, Farrell stated in relevant part:

9          During settlement negotiations, I had always told the CSC lawyers that I had no authority
           to settle the case, but I could recommend a settlement to you. In other words, if anybody
10         did not want to settle, his or her case would go to trial. In other words, it is an individual
           decision because it [sic] you accept the settlement in La., you cannot participate in the
11         Virginia suit that I hope to file this week.

12         In response to that position, CSC wanted a provision that if 30 of the 37 plaintiffs did not
           settle, then CSC could pull the plug on the entire settlement. Hence, CSC acknowledge
13         [sic] that individuals could opt out of the settlement.

14         After we reached an agreement in principal [sic] last November, the CSC lawyers sent
           me a proposed agreement. I told them that it did not reflect our agreement, because **it
15         would result in a dismissal of the case for those who did not want to settle** (emphasis
           added).

16
           CSC has now filed a motion to enforce its draft of the agreement. I will keep you posted
17         on the developments.

18         If the settlement agreement falls through, that is not bad news. The days after we reached
           a verbal agreement last November, the court granted the motion of the six bellwether
19         [sic] for summary judgment. If the case is put back on the trial docket, we will file a
           motion for a judgment as to all plaintiffs.

20
21         41.    On or about February 8, 2018, Bullis received an email from Farrell addressed to

22   "Clients." In the email, Farrell stated:

23         The new lawsuit will be filed in Virginia by Monday.

24

COMPLAINT - 16

In the meantime, several of you have indicated that you would like to take your settlement now in the Louisiana suit and **not** participate in the new suit in Virginia (emphasis in original).

If you are in that category, please respond to me ASAP, "*I want my money now*" (emphasis in original).

If I do not hear from you, I assume that you still want to participate in the Virginia suit. There will still [sic] a little time to change your mind and take the Louisana [sic] settlement.

The settlement in Louisiana may not happen anyway. CSC has indicated that it will cancel the entire settlement unless enough of you accept the Louisiana settlement.

42.     On or about February 18, 2018, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated in relevant part:

This will give you an update on the status of the settlement of the Louisiana case. CSC claims that everybody must accept the settlement or at lease [sic] sign a [sic] an agreement not to sue CSC in Virginia or elsewere [sic].

The judge gave us until Feb 21 to try to work something out. I doubt that will happen, so the court will have to rule on CSC's motion. The best outcome is for the court to restore your case to the docket. We will then file a motion for summary judgment. In that event, you may be able to collect in both cases.

We will still try to get CSC to honor the settlements with the indiviuals [sic] who want to settle now. However, the agreement gives CSC the option to cancel the entire settlement if fewer that [sic] 30 people accept the settlement.

43.     On or about March 22, 2018, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "At the hearing…on Tuesday, Judge Morgan denied CSC's motion to enforce its version of the settlement agreement. CSC had wanted the judge to force everybody to sign a release that would have prevented everybody from participating in the Virginia suit…The bottom line – you stand to recover in both the La. and the Va. cases."

44.     On or about August 7, 2018, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "CSC said they will settle with anybody who wants to sign a full release. Anybody who signs a release cannot participate in the Virginia suit. I told them the

COMPLAINT - 17

1   'new' offer was unacceptable. I got an email from them today asking to talk again in the

2   morning. I will report back after that call."

3         45.     On or about August 8, 2018, Bullis received an email from Farrell addressed to

4   "Clients." In the email, Farrell stated, "Double checking to see if anybody wants to settle now in

5   the Louisiana case and be done with CSC and not participate in the Virginia suit…If so, let me

6   know ASAP.  CSC 'says' it will pay within 2 weeks of receiving a signed release."

7         46.     On or about October 1, 2018, Bullis was copied on an email from another of

8   Farrell's CSC clients in response to Farrell's email to "Clients," dated August 8, 2018. The CSC

9   client replied:

10        Mr. Farrell,

11        You sent an email on 8/8/18 saying you would be getting with us concerning a meeting
12        you would be having with the judge. Today is 10/1/18 and obviously no on [sic] has
          heard from you. I've attempted to call and email with no response. Can you tell us what
13        the deal is? Are you still working the case? Where are you? Are you alive? Like really
          why won't you respond to your clients. I cant [sic] handle the idea of paying you for
14        services not rendered. Part of this agreement include [sic] a communication with me and
          the other 50 peoe [sic] involved. I expect to hear from you by COB today!

15        47.     On or about October 5, 2018, Farrell filed a civil complaint for breach of contract

16   and for consequential damages in the Circuit Court of Fairfax County, captioned *Kenneth Alford*

17   *et al. v. Computer Sciences Corporation*, Case No. CL-2018-14402 ("Lawsuit No. 2" or

18   "*Alford*"). Bullis was a named plaintiff in Lawsuit No. 2. Like Bullis, plaintiff Kenneth Alford

19   was a citizen of the state of Washington.

20        47.1     Paragraph 35 of the complaint in Lawsuit No. 2 provided: "The plaintiffs

21   seek contract damages for breaches that occurred *prior* to March 13, 2012 (emphasis in original).

22   Breaches after that date are being pursued by these plaintiffs in the Eastern District of Louisiana

23   in Rose v. CSC, 2:15-cv-813 (E.D. La.)."

24

COMPLAINT - 18

47.2    At Exhibit A to the complaint in Lawsuit No. 2, Bullis' information was given as follows:  Date of Offer Letter, 5/3/10; Hourly Rate Offered, $33.17; and Approximate Dates of Employment, 5/29/10 through 6/4/12.

48.    On or about November 9, 2018, CSC filed a plea in bar (motion to dismiss) to dismiss plaintiffs' complaint in Lawsuit No. 2. In its plea (motion), CSC argued as follows:

48.1    Plaintiffs' claims were barred by Virginia's five-year statute of limitations and tolling of the statute of limitations was unavailable to plaintiffs since their claims were previously dismissed after a determination of the merits by the U.S. District Court in Lawsuit No. 1.

48.2    Plaintiffs' claims were barred by Virginia Rule 1:6(a) and the doctrine of *res judicata*.

48.3    Plaintiffs' claims were barred based on Virginia's prohibition against "claim-splitting."

49.    On or about November 14, 2018, Bullis received an email from Farrell addressed to "Guy." In the email, Farrell stated:

> When I attend the settlement conference in New Orleans on Nov 26, I need authority from you and all other plaintiffs to settle. My calculations show that during the period in question (March – May 2012) your claim for unpaid wages is:
>
> $ 18,973.24.
>
> I will try to settle for a larger figure that includes prejudgment interest.  However, I need your authority to settle for the above figure as a base. **This settlement will not impact the Virginia case** (emphasis added).
>
> Please respond ***I agree*** (emphasis in original).
>
> Mike
>
> PS – Under our agreement, a settlement is subject to a 27% legal fee.

COMPLAINT - 19

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1   50.     On or about November 15, 2018, Bullis responded to Farrell's email of November

2   14, 2018, regarding the settlement conference to be held on November 26, 2018, in New Orleans,

3   Louisiana. Bullis commented as follows:

4   I do NOT agree.

5   Based upon your email to me dated November 22, 2017, you outlined the amount of
    recovery I could expect based upon Louisiana versus Virginia law. Based upon your
6   calculations, I could expect $18,973.24 less 27% legal fee under Louisiana law and
    $137,456.48 less 40% legal fee under Virginia law. I replied on the same date that I
7   elected to go with Virginia law.

8   I am not sure that I understand what is going on. If I settle the Louisiana case for
    $18,973.24, then am I not settling my entire claim for that amount? I don't understand
9   how the settlement of the Louisiana claim will not impact the Virginia case. Does this
    mean that the $18,973.24 amount is deducted from the $137,456.48 amount? What is the
10  status of the Virginia case?

11  Since I don't understand what is going on in my case, I don't want to settle at this time.

12  51.     On or about November 19, 2018, Bullis received an email from Farrell addressed

13  to "Clients." In the email, Farrell stated, "Several of you had questions about whether settling in

14  Louisiana will have any impact on the Virginia case. **It will have none** (emphasis in original)."

15  52.     On or about November 19, 2018, Bullis responded to Farrell's November 19,

16  2018, email regarding Farrell's assurance that settling in Louisiana would not have any impact

17  on the Virginia case, Bullis replied, "Since you say that this settlement does not in any way

18  affect the Virginia case, then I agree [to settle]."

19  53.     On or about December 4, 2018, Bullis received an email from Farrell addressed to

20  "Guy." In the email, Farrell stated, "The gross settlement was $390,000. After deducting our-of-

21  pocket [sic] expenses of $7,595.82, the net settlement is $382,404.18. Your prorate [sic] share

22  (based on your hours worked) is: **$ 19,882.19** (emphasis in original). This amount will be

23  reduced by a 27% legal fee."

24

COMPLAINT - 20

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

54. On or about December 14, 2018, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "I am having problems with the CSC lawyers on the wording of proposed settlement agreement…In the meantime, CSC wants you to complete and sign the first page of the attached W-4 form for tax withholding purposes. To keep things moving, please return the first page to me ASAP."

55. On or about December 19, 2018, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated in relevant part:

> This morning we finalized the wording of the settlement agreement. CSC has stated it will issue checks by next Friday *if* it has received a signed W4 [sic] form from everybody by this Friday (emphasis in original).

> I have attached a list of those who have ***not*** returned the W4 [sic] form. This requires your immediate attention. If you know anybody on this list who has not returned it, please call or email them. Otherwise, it will hold up checks for everybody.

55.1 Bullis' name was included in the list of those clients who had not returned the W-4 form.

56. On or about December 19, 2018, the parties in Lawsuit No. 1 notified the Court that a settlement of the matter was reached.

57. On or about December 19. 2018, U.S. District Court Judge Susie Morgan signed an order of dismissal in Lawsuit No. 1

58. On or about December 20, 2018, Bullis received an email from Farrell addressed to "Guy." Farrell stated that attached to the email was Bullis' settlement agreement and Farrell instructed Bullis to "…sign the last page and return the entire agreement to [Farrell] ASAP."

58.1 Farrell failed to advise Bullis regarding the terms and the potential consequences of Bullis' signature on the settlement agreement.

COMPLAINT - 21

59.     On or about December 20, 2018, Bullis responded to Farrell's email of December 20, 2018. Regarding the settlement agreement, Bullis replied:

> I cannot sign this release as written. Under Paragraph 3(a) "Released Claims," I would be releasing CSC from "any and all manner of action or actions" which I now have or may hereafter have. In addition to this contract action, I have a workers' compensation action under the Defense Base Act against CSC for which I am currently receiving weekly payments related to medical insurance benefits administered by the US Department of Labor. Thus, the language of the agreement should be modified to exclude my claim against CSC related to the Defense Base Act action.

> You stated previously that the Louisiana settlement would not affect the Virginia case you recently filed. I just want to confirm that if I sign a modified agreement to exclude my DBA claim against CSC that I am not also releasing it from the pending Virginia action because Paragraph 3(a) expressly states that I "hereby release[] and forever discharge[] CSC...[from] any and all manner of action or actions."

59.1     Farrell never responded to the foregoing email.

60.     On or about December 21, 2018, Bullis received an email from Farrell with the subject: "Urgent." In the email, Farrell stated, "Please call the office ASAP. Your W4 [sic] form is due today and we still have not received it back from you."

60.1     Bullis responded to the foregoing email from Farrell: "Please read the email I sent you yesterday."

61.     On or about January 6, 2019, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "The CSC lawyers have advised me that they will send me in bulk the checks for those of you who have returned both the W-4 form and the signed settlement agreement…I will mail your check as soon as you confirm your address."

61.1     Bullis' name and address were included in the email.

61.2     Bullis never returned the W-4 form or the signed settlement agreement to Farrell.

COMPLAINT - 22

62.     On or about January 11, 2019, plaintiffs filed their response to CSC's plea in bar in Lawsuit No. 2. In their response, plaintiffs argued as follows:

62.1    The plaintiffs' claims were not barred by the doctrine of *res judicata*. While the plaintiffs' claims in Lawsuit No. 1 were barred in Louisiana, "they were not barred from being refiled in another that had a longer statute of limitations. The order dismissing their claims specifically left that issue unresolved."

62.2    The plaintiffs' claims were not barred by Virginia's statute of limitations and the statute was tolled in Lawsuit No. 1 while plaintiffs' claims were pending in Louisiana.

62.2.1         The plaintiffs' claims were eventually dismissed based on Louisiana's statute of limitations.

62.2.2         There was no ruling on the merits.

62.2.3         The dismissal was based on the procedural question of the statute of limitations.

62.2.4         The Court in Lawsuit No. 1 did not rule on the substantive merits of plaintiffs' claims.

62.3    Plaintiffs' complaint does not involve claim-splitting because each work-week stands alone as a separate cause of action.

63.     On or about January 18, 2019, Bullis received an email from Farrell. In the email, Farrell stated in relevant part:

> Our settlement agreement says that CSC does not have to pay until the judge has entered a judgment dismissing the case. The CSC lawyers and I submitted a proposed judgment to the court before Christmas. In a later conference call, the judge said she wants some changes.
>
> We revised it and CSC submitted it to the judge again.

COMPLAINT - 23

1
2

The judge's order says that CSC will send checks within 14 days of today to those plaintiffs who have returned their paperwork.

3

64.     On or about January 18, 2019, Bullis received a second email from Farrell. In the

4

email, Farrell gave an update on the case: "The judge filed the judgment just before 5 pm today.

5

We should have checks no later than Feb 1."

6

65.     On or about January 18, 2019, in Lawsuit No. 1, U.S. District Court Judge Susie

7

Morgan signed an order for consent judgment, which was entered in favor of specifically named

8

plaintiffs against CSC.

9
10
11
12
13
14
15
16

65.1    Bullis' name was included in the consent judgment.

65.2    The judgment amount in Bullis' favor was $19,882.19.

65.3    Bullis never signed and returned the settlement agreement to Farrell.

65.4    Bullis never signed and returned the W-4 form to Farrell.

65.5    Bullis never received payment as specified under the consent judgment.

65.6    Farrell never provided Bullis with a copy of the consent judgment.

65.7    Farrell never informed Bullis that a consent judgment was entered in his

favor.

17

66.     On or about January 25, 2019, the Circuit Court in Lawsuit No. 2 entered an order

18

admitting Farrell to appear *pro hac vice* in the matter.

19

67.     On or about January 26, 2019, Bullis received an email from Farrell addressed to

20

"Clients." In the email, Farrell stated, "Yesterday, I mailed checks to the following 19 clients. 9

21

more of you will get a check soon. CSC withheld a good chunk for taxes including Virginia

22

taxes. You should be able to get the Va. taxes back by filing a return there."

23
24

COMPLAINT - 24

67.1    Farrell followed up the same day regarding the foregoing email. Farrell stated he was providing a new list of clients with all 19 names since the list in his previous email had only 17 names.

67.2    Bullis' name was not included in the list of 17 clients in the first email or in the list of 19 clients in the second email.

68.    On or about February 7, 2019, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated he was giving an update on the Virginia case:

This is a status report on the Virginia case. CSC has filed a plea in bar which is a type of a motion to dismiss. The court has scheduled a hearing on the motion for Friday, Feb. 8, in Fairfax, Virginia. I am flying there today.

The motion raises some complex issues that we are taking very seriously. I will report back soon.

69.    On or about February 8, 2019, the Circuit Court in Lawsuit No. 2 entered an order dismissing plaintiffs' case with prejudice.

69.1    The Court ruled that CSC's plea in bar was sustained as to all three grounds set forth by CSC in the plea at bar.

69.2    The Court ruled that the order was final.

70.    On or about February 22, 2019, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated:

We have had a setback in the Virginia case.

The court conducted a hearing in Fairfax, Virginia, on February 8, on CSC's Plea in Bar. The court has granted CSC's Plea in Bar and dismissed the case. The legal issues are complex. The court said we had some interesting arguments but it would nevertheless grant the motion.

I will send everybody a copy of the motion and our response over the weekend.

We will appeal this ruling to the Virginia Court of Appeals. It is obviously a setback but I am committed to pursuing our claims as far as we can take them.

COMPLAINT - 25

70.1    Farrell never sent Bullis a copy of the motion or plaintiffs' response to the motion.

71.    On or about August 1, 2019, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated, "[the] Virginia Supreme Court has set a telephonic hearing for August 23 on our petition to file an appeal."

72.    On or about August 23, 2019, Bullis received an email from Farrell. Farrell stated, "[the] oral argument today with the Virginia Supreme Court went well. We should get a decision in 30-60 days."

73.    On or about October 31, 2019, Bullis received an email from Farrell addressed to "Clients." In the email, Farrell stated:

I have attached a copy of the order from the Virginia Supreme Court dismissing our appeal. This is extremely disappointing.

We had spent numerous hours thoroughly briefed [sic] 3 complex issues but the court did not even list a reason for denying the appeal.

Unfortunately, this is the end of the road for this case. I wish the outcome had been different for everybody.

I wish everybody the very best for the future.

73.1    The attached order from the Supreme Court of Virginia was dated September 4, 2019. In denying review for Lawsuit No. 2, the Supreme Court found no reversible error in the lower court's judgment.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

74.    Bullis realleges and incorporates by reference paragraphs 1-73.1 as though fully set forth herein.

COMPLAINT - 26

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

75.     The elements of a breach of fiduciary duty claim are: (1) the existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach caused the injury.

76.     At all times relevant herein, an attorney-client relationship existed between Farrell and Bullis under the terms of two written attorney engagement agreements ("the attorney engagement agreements") offered to Bullis by Farrell and signed by Bullis on February 6, 2015, and on July 28, 2017.

77.     At all times relevant herein, Bullis relied on Farrell for advice and counsel regarding Bullis' claim against CSC for breach of contract. Bullis relied on the representations made by Farrell and he entrusted Farrell with the duty to pursue his breach of contract claim against CSC.

78.     Farrell held himself out as competent in the area of law with the legal matter for which he represented Bullis, thus, Farrell was obligated by the attorney-client relationship to fully, fairly, and competently represent Bullis in all respects.

79.     Farrell had a duty to Bullis which required Farrell to disclose all material information and developments in the course of litigation reasonably necessary for Bullis to make informed decisions.

80.     Farrell had a fiduciary duty, and a contractual obligation as provided for under the terms of the attorney engagement agreements, to disclose any conflicts of interest that might impair Farrell's ability to represent Bullis.

80.1     Farrell had a duty to place Bullis' interest before Farrell's own interest.

COMPLAINT - 27

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA 98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

81.     During the period of representation, Farrell failed to exercise reasonable care, skill, and diligence in performing legal services for Bullis and Farrell breached his fiduciary duty in his representation of Bullis, as set forth below:

A.     Conflict of Interest: Farrell's Self-Interest to Maximize Attorney Fees

81.1    Farrell was the lead attorney for the plaintiffs in *Rhodes*, which originated in federal court in Mississippi, on the same claim against the same defendant as Bullis' claim against CSC.

81.2    In *Rhodes*, the district court applied Mississippi's choice-of-law rules and determined that Virginia law governed the case. CSC appealed the district court's application of Virginia law to the case. The Fourth Circuit affirmed the district court's determination that Virginia law governed the case.

81.3    Farrell is an attorney licensed to practice law in Mississippi and he conducted business at the Law Office of Mike Farrell, PLLC, with its principal place of business located in Jackson, Mississippi.

81.4    Based on Farrell's familiarity, and advanced hindsight, with Mississippi Southern's ruling as to the choice-of-law rules in *Rhodes* (which was affirmed on appeal by the Fourth Circuit), Farrell knew that Mississippi Southern would apply Virginia law to Bullis' case and the proper venue would be the U.S. District Court for the Eastern District of Virginia at Alexandria.

81.5    Unlike Louisiana, Virginia law has no statutory provision for attorney fees in a breach of contract case for unpaid wages such as Bullis' claim.

81.6    Instead of filing Bullis' case in Mississippi or in Virginia, Farrell filed Bullis' case in Louisiana in hopes of availing himself to additional attorney fees provided by

COMPLAINT - 28

Louisiana law, which would have been above and beyond the contingency fee he would have received under the attorney engagement agreement signed by Bullis. In taking the foregoing action, Farrell placed his own interest above that of his client, Bullis.

81.7    In placing his own interest above his client, Bullis, Farrell's conduct caused substantial harm to Bullis.

81.7.1    While Farrell's attorney engagement agreement in Lawsuit No. 1 unambiguously stated that Louisiana's statute of limitations for Bullis' claim was ten years, the Court in Lawsuit No. 1 ruled that Bullis' claim was subject to a three-year prescriptive period (statute of limitations) for Bullis' unpaid wage claims.

81.7.2    Had Farrell initially filed suit in Mississippi, where he is licensed to practice law and where he has his principal place of business, or in Virginia per *Rhodes*, Bullis' claim would be subject to a five-year statute of limitations under Virginia law and not to a three-year prescriptive period (statute of limitations) under Louisiana law.

81.7.3    Bullis' dates of employment with CSC were May 29, 2010 through June 4, 2012, thus, his unpaid wage claim encompassed approximately 24 months. Lawsuit No. 1 was filed on March 13, 2015. Bullis' claim against CSC was fully within the five-year statute of limitations under Virginia law, but it was not fully within the three-year prescriptive period (statute of limitations) under Louisiana law.

81.7.4    Due to the three-year prescriptive period (statute of limitations) for unpaid wages in Louisiana, Bullis' claim was partially prescribed by approximately 21 months (out of 24 months).

81.7.4.1    Including Bullis, there were 95 plaintiffs in *Rose*, with a period of employment with CSC ranging from 2009 through 2012. All of the foregoing

COMPLAINT - 29

claims by the 95 plaintiffs would not have expired under Virginia's five-year statute of limitations (although those plaintiffs with an employment start date in 2009 would be barred by the statute of limitations for up to one-year of unpaid overtime wages).

        81.7.5      After the Court in Lawsuit No. 1 ruled that Louisiana's three-year prescriptive period (statute of limitations) applied to Bullis' claim, Lawsuit No. 1 was dismissed with prejudice by the Court.

        81.7.6      After Lawsuit No. 1 was dismissed with prejudice by the Louisiana Court, Farrell unsuccessfully attempted to revive Bullis' claim in Virginia with Lawsuit No. 2. On or about October 5, 2018, Farrell filed suit in Lawsuit No. 2 in the Circuit Court of Fairfax County.

        81.7.6.1      The Virginia Court in Lawsuit No. 2 held that Bullis' suit was barred since Virginia's statute of limitations had expired because the statute was not tolled while Bullis' claim was pending in Louisiana. By the time Lawsuit No. 2 was filed, the statute of limitations in Virginia had expired on Bullis' claim by nearly three-and-one-half years.

        81.7.6.2      Including Bullis, there were 46 plaintiffs in Lawsuit No. 2, with a period of employment with CSC ranging from 2009 through 2012. All of the foregoing claims by the 46 plaintiffs would not have expired under Virginia's five-year statute of limitations (although those plaintiffs with an employment start date in 2009 would be barred by the statute of limitations for up to one-year of unpaid overtime wages). By the time Farrell filed Lawsuit No. 2, the statute of limitations in Virginia had expired on all of the plaintiffs' claims by nearly three-and-one-half years.

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1            81.7.7       Bullis' unpaid wage claim against CSC totaled $156,429.72

2    (partial claim amount in Louisiana/Lawsuit No.1 of $18,973.24 and partial claim amount in

3    Virginia/Lawsuit No. 2 of $137,456.48).

4            81.8    As a result of Farrell's breach of his fiduciary duty to Bullis, and due to

5    Farrell's legal malpractice discussed below in the Second Cause of Action, Bullis has received

6    $0 in his claim against CSC.

7             B.    <u>Conflict of Interest: Settlement to Conceal Mistake</u>

8            81.9    On or about November 1, 2017, Farrell conveyed to Bullis by email that

9    CSC "offered to settle everything for a total of $250,000." The settlement amount would be

10   divided among the plaintiffs.

11           81.9.1       Farrell stated he could not recommend settlement for

12   $250,000 and he would hold to the position "that any settlement would have to be without

13   prejudice to you filing a new suit in Virginia and appealing the Louisiana remedies issue."

14           81.9.2       Farrell stated that CSC would not settle based upon the

15   foregoing position.

16           81.10  On or about November 8, 2017, Farrell conveyed to Bullis by email that

17   the parties had reached a tentative settlement for $600,000. The settlement amount would be

18   divided among the plaintiffs.

19           81.10.1     Farrell stated that he recommended the settlement.

20           81.10.2     Farrell stated that any plaintiff who accepted the settlement

21   would be required to waive the right to join in the Virginia lawsuit.

22

23

24

COMPLAINT - 31

81.11   On or about November 22, 2017, Farrell emailed Bullis and Farrell stated in relevant part, "If enough people don't sign up for the settlement in Louisiana, CSC can walk away from the settlement agreement."

81.11.1      In response to the foregoing email, Bullis replied to Farrell's email, "Mike, I want to go with VA law."

81.12   On or about January 8, 2018, Farrell emailed Bullis and Farrell stated in relevant part, "[I]f you accept the settlement in La., you cannot participate in the Virginia suit…"

81.12.1      Farrell further stated, "CSC wanted a provision that if 30 of the 37 plaintiffs did not settle, then CSC could pull the plug on the entire settlement."

81.12.2      Farrell explained, "After we reached an agreement in principal [sic] last November, the CSC lawyers sent me a proposed agreement. I told them that it did not reflect our agreement, **because it would result in a dismissal of the case for those who did not want to settle** (emphasis added)."

81.13   On or about February 8, 2018, Farrell emailed Bullis and Farrell stated in relevant part, "[S]everal of you have indicated that you would like to take your settlement now in the Louisiana suit and **not** participate in the new suit in Virginia (emphasis in original)."

81.13.1      Farrell further stated, "[the] settlement in Louisiana may not happen anyway. CSC has indicated that it will cancel the entire settlement unless enough of you accept the Louisiana settlement."

81.14   On or about February 18, 2018, Farrell emailed Bullis and Farrell stated in relevant part, "CSC claims that everybody must accept the settlement or at lease [sic] sign a [sic] an agreement not to sue CSC in Virginia or elsewere [sic].

COMPLAINT - 32

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

81.14.1     Farrell further stated he would "still try to get CSC to honor the settlements with the indiviuals [sic] who want to settle now. However, the agreement gives CSC the option to cancel the entire settlement if fewer that [sic] people accept the settlement."

81.15  On or about August 7, 2018, Farrell emailed Bullis and Farrell stated in relevant part, "CSC said they will settle with anybody who wants to sign a full release. Anybody who signs a release cannot participate in the Virginia suit. I told them the 'new' offer was unacceptable."

81.16  On or about August 8, 2018, Farrell emailed Bullis and Farrell inquired in relevant part, "Double checking to see if anybody wants to settle now in the Louisiana case and be done with CSC and not participate in the Virginia suit…"

81.17  On or about October 5, 2018, Farrell filed Lawsuit No. 2 in the Circuit Court of Fairfax County.

81.18  On or about November 9, 2018, CSC filed a plea in bar (motion to dismiss) to dismiss Lawsuit No. 2. CSC argued in relevant part that the plaintiffs' claims were barred by Virginia's five-year statute of limitations and tolling of the statute was unavailable to the plaintiffs since the Louisiana Court dismissed with prejudice the plaintiffs' claims.

81.19  On or about November 14, 2018, Farrell emailed Bullis and Farrell stated in relevant part, "I need your authority to settle for [$18,973.24] as a base. **This settlement will not impact the Virginia case** (emphasis added). Please respond *I agree* (emphasis in original). PS – Under our agreement, a settlement is subject to a 27% legal fee."

81.19.1     In response to the foregoing email, on or about November 15, 2018, Bullis responded in relevant part, "I do NOT agree. If I settle the Louisiana case…then

COMPLAINT - 33

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA 98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1  am I not settling my entire claim…? Since I don't understand what is going on in my case, I

2  don't want to settle at this time."

3         81.20   On or about November 19, 2018, Farrell emailed Bullis and Farrell stated,

4  "Several of you had questions about whether settling in Louisiana will have any impact on the

5  Virginia case. **It will have none** (emphasis in original)."

6         81.20.1          Relying on Farrell's legal advice in the foregoing email, on

7  or about November 19, 2018, Bullis replied, "Since you say that this settlement does not in any

8  way affect the Virginia case, then I agree [to settle].

9         81.21   Farrell knew that he had jeopardized Bullis' claim, and the claims of 94

10  other plaintiffs, when he filed suit in Louisiana in an attempt to maximize the amount he would

11  recover in attorney fees.

12         81.21.1          After the Court in Lawsuit No. 1 applied Louisiana's three-

13  year prescriptive period (statute of limitations) to Bullis' claim, Farrell attempted to cure or to

14  minimize his mistake regarding the statute of limitations by unsuccessfully attempting to

15  negotiate a settlement with CSC whereby Bullis, and the other plaintiffs, could settle part of their

16  claims in Louisiana and pursue the other part of their claims in Virginia.

17         81.21.2          Farrell recognized the significance of his mistake on Bullis'

18  claim with respect to the statute of limitations, as demonstrated by his own words in his email to

19  Bullis dated January 8, 2018, wherein Farrell stated, "After we reached an agreement in principal

20  [sic] last November, the CSC lawyers sent me a proposed agreement. I told them that it did not

21  reflect our agreement, **because it would result in a dismissal of the case for those who did not**

22  **want to settle** (emphasis added)." Based on Farrell's legal opinion regarding dismissal of the

23  case for those who did not settle, Farrell knew that the Virginia lawsuit would not be successful.

24

COMPLAINT - 34

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

81.22   From November 1, 2017, until the time CSC filed its motion to dismiss the Virginia case on November 9, 2018, Farrell's position had been consistent: (1) CSC required most or all of the plaintiffs to settle or it could walk away from the settlement agreement; and (2) settlement of the Louisiana case would bar Bullis, and the other plaintiffs, from filing suit in Virginia.

81.22.1   After CSC filed its motion to dismiss the Virginia case on November 9, 2018, suddenly, Farrell's position changed after he had an opportunity to evaluate CSC's argument for dismissal. Five days after CSC filed its motion to dismiss, on or about November 14, 2018, Farrell's position became, "**This settlement will not impact the Virginia case** (emphasis added), and on or about November 19, 2018, Farrell further assured Bullis, and the other CSC plaintiffs, that settling in Louisiana would have no impact on the Virginia case.

81.23   Rather than confess his mistake to Bullis, and to the other plaintiffs, regarding the statute of limitations issue, Farrell endeavored to cure his mistake by unsuccessfully attempting to negotiate a settlement with CSC whereby Bullis, and the other plaintiffs, could settle part of their claims in Louisiana and pursue the other part of their claims in Virginia.

81.23.1   With the knowledge that CSC's motion to dismiss the Virginia case would be successful, Farrell then advised Bullis, and the other plaintiffs, that settlement of the Louisiana case would have no impact on the Virginia case.

81.24   On November 8, 2017, Farrell informed Bullis by email that a tentative settlement had been reached with CSC for $600,000.

81.24.1   Nearly a year later, on December 4, 2018, Farrell informed Bullis by email that the gross settlement was $390,000.

COMPLAINT - 35

81.24.2    Farrell never explained to Bullis the $210,000 difference between the $600,000 amount Bullis subsequently agreed to and the $390,000 amount for which Farrell ultimately settled the case, nor did Farrell provide Bullis with an accounting of the settlement funds.

81.24.3    As Bullis, and the other plaintiffs, receive a prorated share of the settlement, Bullis' share was substantially decreased due to the $210,000 difference between the agreed settlement amount and by the actual settlement amount.

81.25    Farrell breached his fiduciary duty to Bullis by failing to inform Bullis that his mistake with respect to the statute of limitations and the settlement negotiations caused substantial harm to Bullis.

81.25.1    Farrell knew that settlement of the Louisiana case would bar the pursuit of the Virginia case, however, he had a self-interest to recover some money for the plaintiffs, with a 27% attorney fee of such settlement proceeds going to himself, so that it would appear that he was somewhat successful in his efforts against CSC, when all of the objective facts indicated otherwise.

81.25.2    In the inducement of obtaining plaintiffs' agreement to settle the Louisiana case, and with the knowledge that the Virginia case would be unsuccessful (but that it would appear to the plaintiffs that he was continuing his fight on their behalf), Farrell made a calculated decision that his conduct herein would not be discovered and that he would not find himself faced with 95 lawsuits for legal malpractice.

81.25.3    Since CSC required most, if not all, the plaintiffs to settle the Louisiana suit, Farrell obtained a consent judgment in favor of Bullis even when Bullis did

COMPLAINT - 36

not sign and return the W-4 form and the settlement agreement, and when Bullis did not receive any settlement funds.

82.     Therefore, Bullis is entitled to any and all damages resulting from Farrell's breach of fiduciary duty and professional misconduct due to his failure to exercise reasonable care and to provide diligent and competent representation in pursuing Bullis' claim against CSC.

## SECOND CAUSE OF ACTION
## LEGAL MALPRACTICE

83.     Bullis realleges and incorporates by reference paragraphs 1-73.1 as though fully set forth herein.

84.     The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

85.     At all times relevant herein, an attorney-client relationship existed between Farrell and Bullis under the terms of two written attorney engagement agreements offered to Bullis by Farrell and signed by Bullis on February 6, 2015, and on July 28, 2017.

86.     During the course of Farrell's representation of Bullis, there were multiple instances wherein Farrell's conduct fell below the applicable standard of care, as set forth below:

      A.     Failure to Investigate

86.1     Farrell failed to conduct adequate legal research and due diligence, including, but not limited to:  Louisiana's prescriptive period (three years and not ten years as expressed in Farrell's attorney engagement agreement for Lawsuit No. 1); whether Virginia's statute of limitations was tolled while Bullis' case was pending in Louisiana; and, claim-splitting wherein a claim based on the same offer letter and FTL can be brought in two different forums.

COMPLAINT - 37

1

       B.     <u>Failure to Know the Correct Statute of Limitations</u>

2

       86.2    Farrell represented to Bullis that the statute of limitations in Louisiana was

3 ten years, when in fact, the statute of limitations applicable to Bullis' claim was three years.

4 Based on Louisiana's prescriptive period (statute of limitations), Bullis' claim of approximately

5 24 months of unpaid wages was partially prescribed by 21 months.

6

       86.3    After Lawsuit No. 1 was dismissed with prejudice by the Louisiana

7 Court, Farrell unsuccessfully attempted to revive Bullis' claim in Virginia with Lawsuit No. 2,

8 but the Virginia Court held that such action was barred since Virginia's statute of limitations had

9 expired on Bullis' claim and the statute was not tolled while Bullis' claim was pending in

10 Louisiana.

11

       86.4    Farrell's breach of his duty to investigate the law with respect to

12 Louisiana's three-year prescriptive period (statute of limitations) caused damage to Bullis

13 because Bullis' claim against CSC partially prescribed by approximately 21 months under

14 Louisiana law, however, had Farrell initially filed suit in Mississippi or in Virginia, Bullis' claim

15 would have survived against CSC because his claim was fully within the five-year statute of

16 limitations under Virginia law.

17

       C.     <u>Failure to Communicate and to Keep Client Informed</u>

18

       86.5    On or about November 22, 2017, Farrell emailed Bullis setting forth

19 Farrell's calculations as to the amount Bullis could expect to recover from the Louisiana lawsuit

20 ($18,973.24) compared with the amount Bullis could expect to recover from the Virginia lawsuit

21 ($137,456.48); however, Farrell failed to inform Bullis how he reached the expected recovery

22 amounts.

23

24

COMPLAINT - 38

86.6     On or about December 4, 2018, Farrell emailed Bullis regarding the settlement of plaintiffs' claims in *Rose*. Farrell stated that the gross settlement amount was $390,000, which was $210,000 less than the $600,000 amount recommended by Farrell on November 8, 2017. Farrell failed to inform Bullis why the case settled for substantially less than the $600,000 amount to which Bullis had subsequently agreed to settle.

86.6.1     In the foregoing email, Farrell stated that Bullis' prorated share of the settlement amount was $19,882.19, but Farrell failed to inform Bullis how he reached that specific amount.

86.7     On or about December 20, 2018, Bullis emailed Farrell and explained to Farrell that the language of the settlement agreement with CSC for the Louisiana case was problematic in that CSC wanted a release for all claims which Bullis had or may have in the future. As Bullis had an ongoing claim against CSC for workers' compensation under the Defense Base Act, he could not sign such a release as written. Farrell never responded to Bullis.

86.7.1     In the foregoing email, Bullis also asked Farrell whether the language in the settlement agreement would impact his pending claim in Virginia because the settlement agreement expressly stated that Bullis would release and forever discharge CSC from "any and all manner of action or actions." Farrell never responded to Bullis.

86.8     On or about January 18, 2019, a consent judgment was entered in favor of Bullis in Lawsuit No. 1 by the Louisiana Court in the amount of $19,882.19. Farrell failed to inform Bullis of the consent judgment when Bullis never formally consummated the CSC settlement by signing and returning the settlement agreement and the W-4 form to Farrell.

86.9     On or about October 31, 2019, Farrell emailed Bullis and he informed Bullis that the Virginia Supreme Court had dismissed the appeal in Lawsuit No. 2. The order

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

from the Virginia Supreme Court was dated September 4, 2019. Farrell waited nearly two months after the Court dismissed the appeal to inform Bullis that the Court had taken such action.

87.     Farrell failed to act with the degree of care, skill, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent attorney in the practice of law. Farrell's acts and omissions were a proximate cause of Bullis' damages and Bullis would not have incurred damages "but for" Farrell's breach of his duty of care to Bullis.

88.     Therefore, Bullis is entitled to any and all damages suffered due to Farrell's acts and omissions in his failure to exercise the degree of care, skill, and knowledge possessed by reasonable, careful, and prudent attorneys in the practice of law.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

89.     Bullis realleges and incorporates by reference paragraphs 1-73.1 as though fully set forth herein.

90.     The elements of a breach of contract claim are: (1) a valid agreement existing between the parties giving rise to a duty; (2) the agreement was breached; (3) proximate cause; and (4) damages.

91.     At all times relevant herein, a contract existed between Farrell and Bullis under the terms of a written attorney engagement agreement ("agreement") for Lawsuit No. 1 offered to Bullis by Farrell and signed by Bullis on February 6, 2015.

92.     The terms of the agreement imposed a duty on Farrell "to pursue claims against CSC for breaching the offer letter that quoted an hourly rate."

93.     The material terms of the agreement included:

COMPLAINT - 40

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

93.1    For Farrell to recover the hourly rate for all hours worked prior to June 1, 2012.

93.2    The venue for the lawsuit would be New Orleans, Louisiana "because that state's law provides for a 10-year statute of limitations."

93.3    Bullis agreed that Farrell could represent other CSC employees in the same suit, but that if a conflict of interest arose, Farrell would disclose such a conflict or a potential conflict to Bullis.

93.3.1    If CSC made a settlement offer to "some but not all of the plaintiffs, then [Farrell] would have a conflict in continuing to represent all plaintiffs. In that event, [Farrell] has the option of withdrawing from the representation of those in the minority."

93.4    Farrell agreed that the case would not be settled without Bullis' approval.

93.5    If ten people joined the suit, Farrell's "'out-of-pocket' expenses will come out of his percentage."

94.    During the agreement period, there were multiple instances wherein Farrell breached the terms of the agreement, as set forth below:

A.    Statute of Limitations

94.1    The terms of the agreement provided for a "10-year statute of limitations" in Louisiana. Farrell breached the terms of the agreement because the statute of limitations for Bullis' claim was actually three years.

94.2    Based on the 10-year prescriptive period (statute of limitations) in Louisiana, Farrell was to recover for Bullis the hourly rate for all hours worked prior to June 1, 2012. Since the prescriptive period (statute of limitations) in Louisiana for Bullis' claim was

COMPLAINT - 41

1    actually three years, the Louisiana Court dismissed Bullis' claims for hours worked prior to

2    March 13, 2012.

3           94.3    A competent and skilled attorney should know the statute of limitations

4    for a client's claim before expressing such time period in a written agreement.

5           94.4    Bullis was unable to recover wages from May 29, 2010 through

6    March 12, 2012, which amounted to approximately 21 months of unpaid hourly wages.

7                  B.      Conflicts of Interest Related to Settlement

8           94.5    The terms of the agreement required Farrell to disclose to Bullis conflicts

9    or potential conflicts among Farrell's other CSC clients with respect to settlement of the case.

10   Additionally, the terms of the agreement permitted Farrell the option to withdraw from the case.

11          94.6    From November 1, 2017, until the time CSC filed its motion to dismiss the

12   Virginia case on November 9, 2018, Farrell's position had been consistent: CSC required most or

13   all of the plaintiffs to settle or it could walk away from the settlement agreement.

14          94.7    After CSC filed its motion to dismiss the Virginia case on November 9,

15   2018, suddenly, Farrell's position changed after he had an opportunity to evaluate CSC's

16   argument for dismissal. Five days after CSC filed its motion to dismiss, on or about November

17   14, 2018, Farrell's position became, "**This settlement will not impact the Virginia case**

18   (emphasis added), and on or about November 19, 2018, Farrell further assured Bullis, and the

19   other CSC plaintiffs, that settling in Louisiana would have no impact on the Virginia case.

20          94.8    Farrell breached the terms of the agreement when he failed to disclose to

21   Bullis that a conflict of interest existed among Bullis and Farrell's other CSC clients because

22   some of the clients wanted to settle, but Bullis and other CSC clients did not. Since CSC could

23

24

COMPLAINT - 42                                          ALANA BULLIS, PS
                                                         1911 Nelson Street
                                                         DuPont, WA  98327
                                                         Telephone (253) 905-4488
                                                         Facsimile (253) 912-4882

1   walk away from the settlement if not enough plaintiffs agreed to settle, a conflict of interest arose

2   among Farrell's CSC clients.

3          94.9   Farrell breached the terms of the agreement when he failed to disclose to

4   Bullis that a conflict of interest existed among Bullis, Farrell, and Farrell's other CSC clients

5   regarding Farrell's mistake with respect to the statute of limitations.

6          94.10   With the knowledge that CSC's motion to dismiss the Virginia

7   case would be successful, Farrell then advised Bullis, and his other CSC clients, that settlement

8   of the Louisiana case would have no impact on the Virginia case.

9          94.11   Farrell knew that settlement of the Louisiana case would bar the pursuit of

10   the Virginia case, however, he had a self-interest to recover some money for his CSC clients,

11   with a 27% attorney fee of such settlement proceeds going to himself, so that it would appear

12   that he was somewhat successful in his efforts against CSC, when all of the objective facts

13   indicated otherwise.

14          94.12   Farrell, in the inducement of obtaining his CSC clients' agreement to settle

15   the Louisiana case, and with the knowledge that the Virginia case would be unsuccessful (but

16   that it would appear to his clients that he was continuing his fight on their behalf), made a

17   calculated decision out of self-interest that his conduct herein would not be discovered and that

18   he would not find himself faced with 95 lawsuits for legal malpractice.

19          94.13   Since CSC required most, if not all, the plaintiffs to settle the Louisiana

20   suit, Farrell obtained a consent judgment in favor of Bullis even when Bullis did not sign and

21   return the W-4 form and the settlement agreement, and when Bullis did not receive any

22   settlement funds.

23

24

COMPLAINT - 43

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1              C.     Settlement Approval

2              94.14   The terms of the agreement provided for Farrell to obtain Bullis' approval

3     for settlement.

4              94.15   On November 8, 2017, Farrell informed Bullis by email that a tentative

5     settlement had been reached with CSC for $600,000.

6              94.16   Nearly a year later, on December 4, 2018, Farrell informed Bullis by email

7     that the gross settlement was $390,000.

8              94.17   Bullis approved the settlement for $600,000, but he did not approve the

9     settlement for $390,000.

10             94.18   As Bullis, and Farrell's other CSC clients, receive a prorated share of the

11    settlement, Bullis' share was substantially decreased due to the $210,000 difference between the

12    agreed settlement amount and by the actual settlement amount.

13             D.     "Out-of-Pocket" Expenses

14             94.19   The terms of the agreement provided for Farrell's "'out-of-pocket'

15    expenses to come out of his percentage" if ten people joined the suit.

16             94.20   95 people joined the suit, thus, under the terms of the agreement, Farrell's

17    "out-of-pocket" expenses were to come out of his percentage.

18             94.21   On or about December 4, 2018, Bullis received an email from Farrell. In

19    the email, Farrell stated, "The gross settlement was $390,000. After deducting our-of-pocket

20    [sic] expenses of $7,595.82, the net settlement is $382,404.18…"

21             94.22   As Bullis, and Farrell's other CSC clients, receive a prorated share of the

22    settlement, Bullis' pro rata share was decreased due to Farrell's prohibited deduction from the

23    settlement amount of $7,595.82 for his out-of-pocket expenses.

24

COMPLAINT - 44

95.     Farrell's breach of his duties to Bullis under the terms of the agreement were a proximate cause of Bullis' damages and Bullis would not have incurred damages "but for" Farrell's breach of the agreement.

96.     Therefore, Bullis is entitled to any and all damages suffered due to Farrell's breach of his duties under the terms of the agreement.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CONSUMER PROTECTION ACT ("CPA")**

97.     Bullis realleges and incorporates by reference paragraphs 1-73.1 as though fully set forth herein.

98.     The elements of a CPA claim are: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. RCW 19.86.020.

99.     Income is intangible property under Article VII, § 1 of the Washington Constitution. *Kunath v. City of Seattle,* 10 Wn. App. 205, 444 P.3d 1235, 1251 (2019). Bullis' claim against CSC involved unpaid wages, which is income.

100.     An attorney may be subject to liability under the CPA. *Short v. Demopolis,* 103 Wn.2d 52, 65, 691 P.2d 163 (1984). CPA claims against attorneys applies only to the "entrepreneurial" aspects of the practice of law, i.e., how fees are calculated, billed, and collected and how a law firm obtains, retains, and dismisses clients. *Eriks v. Denver,* 118 Wn.2d 451, 464, 824 P.2d 1207 (1992).

101.     Farrell violated the provisions of the CPA, as set forth below:

COMPLAINT - 45

A.   Attorney Fees: Louisiana Versus Virginia

101.1   Farrell was the lead attorney for the plaintiffs in *Rhodes*, which originated in federal court in Mississippi, on the same claim against the same defendant as Bullis' claim against CSC.

101.2   In *Rhodes*, the Mississippi district court applied Mississippi's choice-of-law rules and determined that Virginia law governed the case. CSC appealed the district court's application of Virginia law to the case. The Fourth Circuit affirmed the district court's determination that Virginia law governed the case.

101.3   Farrell is an attorney licensed to practice law in Mississippi and he conducted business at the Law Office of Mike Farrell, PLLC, with its principal place of business located in Jackson, Mississippi.

101.4   Based on Farrell's familiarity, and advanced hindsight, with Mississippi Southern's ruling as to the choice-of-law rules in *Rhodes* (which was affirmed on appeal by the Fourth Circuit), Farrell knew that the Mississippi district court would apply Virginia law to Bullis' case and the proper venue would be the U.S. District Court for the Eastern District of Virginia at Alexandria.

101.5   Unlike Louisiana, Virginia law has no statutory provision for attorney fees in a breach of contract case for unpaid wages such as Bullis' claim.

101.6   Instead of filing Bullis' case in Mississippi or in Virginia, Farrell filed Bullis' case in Louisiana in hopes of availing himself to additional attorney fees provided by Louisiana law, which would have been above and beyond the contingency fee he would have received under the attorney engagement agreement signed by Bullis. In taking the foregoing action, Farrell placed his own interest above that of his client, Bullis.

COMPLAINT - 46

101.7   In placing his own interest to avail himself to Louisiana's statutory provision for attorney fees above and beyond the contingency fee agreement he entered into with Bullis, Farrell's calculation to increase his attorney fees award in Lawsuit No. 1 caused substantial harm to Bullis because Bullis' claim for unpaid wages was prescribed by approximately 21 months under Louisiana law.

101.7.1      There were 95 plaintiffs in Lawsuit No. 1. Farrell's conduct with respect to attorney fees in the foregoing regard injured 94 plaintiffs, in addition to Bullis.

101.8   Farrell's calculation to avail himself to additional attorney fees provided by Louisiana law, which would have been above and beyond the contingency fee he would have received under the attorney engagement agreement signed by Bullis, was a proximate cause of Bullis' damages and Bullis would not have incurred damages "but for" Farrell's conduct.

B.      Collection of Out-of-Pocket Expenses

101.9   The terms of the attorney engagement agreement ("agreement") for Lawsuit No. 1 provided for Farrell's "'out-of-pocket' expenses to come out of his percentage" if ten people joined the suit.

101.10      95 people joined the suit, thus, under the terms of the agreement, Farrell's "out-of-pocket" expenses were to come out of his percentage.

101.11      On or about December 4, 2018, Bullis received an email from Farrell. In the email, Farrell stated, "The gross settlement was $390,000. After deducting our-of-pocket [sic] expenses of $7,595.82, the net settlement is $382,404.18…"

COMPLAINT - 47

101.12     As Bullis, and Farrell's other CSC clients, receive a prorated share of the settlement, Bullis' pro rata share was decreased due to Farrell's prohibited deduction from the settlement amount of $7,595.82 for his out-of-pocket expenses.

101.13     Farrell's breach of his duties to Bullis under the terms of the agreement were a proximate cause of Bullis' damages and Bullis would not have incurred damages "but for" Farrell's breach of the agreement.

101.14     Therefore, Bullis is entitled to any and all damages suffered due to Farrell's violations of the CPA with respect to his entrepreneurial aspects of legal practice.

## **EXPERT TESTIMONY**

102.     Bullis realleges and incorporates by reference paragraphs 1-73.1 as though fully set forth herein.

103.     Some states require expert testimony to establish the standard of care in a legal malpractice action. *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979). However, the "general rule is to permit but not require expert testimony." *Id.* Washington does not require expert testimony "when the negligence charged is within the common knowledge of lay persons." *Id. See also Slack v. Luke,* 192 Wn. App. 909, 370 P.3d 49 (2016).

104.     Farrell's negligence in this matter would fall within the common knowledge of lay persons, as set forth below:

A.     Legal Malpractice and Breach of Contract: Statute of Limitations

104.1   The attorney engagement agreement entered into by Bullis and Farrell for Lawsuit No. 1 stated that Louisiana would be the venue for Lawsuit No. 1 because the state's law provided for a 10-year statute of limitations.

COMPLAINT - 48

104.2   On or about July 7, 2017, the Louisiana Court in Lawsuit No. 1 ruled that Bullis' claim was subject to a three-year prescriptive period (statute of limitations).

104.3   Farrell did not deny that a three-year prescriptive period (statute of limitations) applied to Bullis' claim.

104.4   Farrell failed to oppose CSC's motion regarding application of Louisiana's three-year prescriptive period (statute of limitations) to Bullis' claim nor did he present any argument that a 10-year statute of limitations applied to Bullis' claim.

104.5   Farrell stated that Virginia's statute of limitations for a breach of contract claim was five years, which is two years longer than Louisiana's statute of limitations for Bullis' claim.

104.6   Bullis' dates of employment with CSC were May 29, 2010 through June 4, 2012, thus, his unpaid wage claim encompassed approximately 24 months. Lawsuit No. 1 was filed on March 13, 2015. Bullis' claim against CSC was fully within the five-year statute of limitations under Virginia law, but it was not fully within the three-year prescriptive period (statute of limitations) under Louisiana law.

104.7   Thus, it would be common knowledge by lay persons that Bullis' claim would have fully survived had Farrell properly filed suit in Mississippi or in Virginia due to a longer period of five years provided by Virginia's statute of limitations instead of his claim being partially prescribed by approximately 21 months (out of 24 months) under Louisiana's shorter prescriptive period (statute of limitations) of three years.

COMPLAINT - 49

B.     Breach of Fiduciary Duty and Breach of Contract: Conflict of Interest/Attorney Fees

104.8   Farrell was the lead attorney for the plaintiffs in *Rhodes*, which originated in federal court in Mississippi, on the same claim against the same defendant as Bullis' claim against CSC.

104.9   In *Rhodes*, the Mississippi district court applied Mississippi's choice-of-law rules and determined that Virginia law governed the case. CSC appealed the district court's application of Virginia law to the case. The Fourth Circuit affirmed the district court's determination that Virginia law governed the case.

104.10     Farrell is an attorney licensed to practice law in Mississippi and he conducted business at the Law Office of Mike Farrell, PLLC, with its principal place of business located in Jackson, Mississippi.

104.11     Based on Farrell's familiarity, and advanced hindsight, with Mississippi Southern's ruling as to the choice-of-law rules in *Rhodes* (which was affirmed on appeal by the Fourth Circuit), Farrell knew that the Mississippi district court would apply Virginia law to Bullis' case and the proper venue would be the U.S. District Court for the Eastern District of Virginia at Alexandria.

104.12     Unlike Louisiana, Virginia law has no statutory provision for attorney fees in a breach of contract case for unpaid wages such as Bullis' claim.

104.13     Thus, it would be common knowledge by lay persons that Farrell made a calculation out of self-interest that he would recover a greater amount for attorney fees in Louisiana than he would in Virginia, and based on that objective, he filed suit in Louisiana instead of in Mississippi or in Virginia (as he had done previously, and successfully, in *Rhodes*), thereby placing his own interests above that of his client, Bullis.

COMPLAINT - 50

1

        D.      Breach of Fiduciary Duty: Conflict of Interest/Conceal Mistake

2          104.14          After the Court in Lawsuit No. 1 ruled that Louisiana's three-year

3   prescriptive period (statute of limitations) applied to Bullis' claim, Lawsuit No. 1 was dismissed

4   with prejudice by the Court.

5          104.15          From November 1, 2017, until the time CSC filed its motion to

6   dismiss the Virginia case on November 9, 2018, Farrell's position had been consistent regarding

7   settlement in the *Rose* case: (1) CSC required most or all of the plaintiffs to settle or it could

8   walk away from the settlement agreement; and (2) settlement of the Louisiana case would bar

9   Bullis, and the other CSC plaintiffs, from filing suit in Virginia.

10         104.16          After CSC filed its motion to dismiss the Virginia case on

11  November 9, 2018, suddenly, Farrell's position changed after he had an opportunity to evaluate

12  CSC's argument for dismissal. Five days after CSC filed its motion to dismiss, on or about

13  November 14, 2018, Farrell's position became, "**This settlement will not impact the Virginia**

14  **case** (emphasis added), and on or about November 19, 2018, Farrell further assured Bullis, and

15  the other CSC plaintiffs, that settling in Louisiana would have no impact on the Virginia case.

16         104.17          Rather than confess his mistake to Bullis, and to the other

17  plaintiffs, with respect to Louisiana's prescriptive period (statute of limitations), Farrell

18  endeavored to cure his mistake by unsuccessfully attempting to negotiate a settlement with CSC

19  whereby Bullis, and the other plaintiffs, could settle part of their claims in Louisiana and pursue

20  the other part of their claims in Virginia.

21         104.18          With the knowledge that CSC's motion to dismiss the Virginia

22  case would be successful, Farrell then advised Bullis, and the other plaintiffs, that settlement of

23  the Louisiana case would have no impact on the Virginia case.

24

COMPLAINT - 51                                          ALANA BULLIS, PS
                                                        1911 Nelson Street
                                                        DuPont, WA  98327
                                                        Telephone (253) 905-4488
                                                        Facsimile (253) 912-4882

104.19       Thus, from a review of the timeline with respect to settlement communication from Farrell to Bullis, it would be common knowledge by lay persons that Farrell recognized that he had to induce plaintiffs to settle the Louisiana case because the Virginia case would be unsuccessful. In the foregoing respect, Farrell made a calculated decision that his mistake regarding the statute of limitations would not be discovered and that he would not find himself faced with 95 lawsuits for legal malpractice if plaintiffs recovered some money rather than no money.

E.       <u>Breach of Contract: No Settlement Without Client Approval</u>

104.20       The terms of the agreement provided for Farrell to obtain Bullis' approval for settlement.

104.21       On November 8, 2017, Farrell informed Bullis by email that a tentative settlement had been reached with CSC for $600,000.

104.22       Nearly a year later, on December 4, 2018, Farrell informed Bullis by email that the gross settlement was $390,000.

104.23       Bullis approved the settlement for $600,000, but he did not approve the settlement for $390,000.

104.24       Thus, it would be common knowledge by lay persons that Farrell breached the terms of the attorney engagement agreement when he failed to obtain Bullis' approval for settlement in the amount of $390,000.

F.       <u>Breach of Contract: Attorney's Out-of-Pocket Expenses</u>

104.25       The terms of the attorney engagement agreement ("agreement") for Lawsuit No. 1 provided for Farrell's "'out-of-pocket' expenses to come out of his percentage" if ten people joined the suit.

COMPLAINT - 52

1         104.26        95 people joined the suit, thus, under the terms of the agreement,

2 Farrell's "out-of-pocket" expenses were to come out of his percentage.

3         104.27        On or about December 4, 2018, Bullis received an email from

4 Farrell. In the email, Farrell stated, "The gross settlement was $390,000. After deducting our-of-

5 pocket [sic] expenses of $7,595.82, the net settlement is $382,404.18…"

6         104.28        Thus, it would be common knowledge by lay persons that Farrell

7 breached the terms of the agreement when he deducted $7,595.82 for his "out-of-pocket"

8 expenses from the gross settlement amount.

9 **CASE WITHIN A CASE**

10         104.29        A malpractice action against a lawyer arising out of litigation

11 requires that the plaintiff try both the underlying action and the malpractice case. (The "case

12 within the case.") *Daugert v. Pappas,* 104 Wn.2d 254, 257, 704 P.2d 600 (1985).

13         104.30        To survive a summary judgment motion claiming the underlying

14 claim is without merit, the plaintiff in a legal malpractice lawsuit must proffer enough evidence

15 to establish the underlying case could have survived a summary judgment motion. *Slack v. Luke,*

16 192 Wn. App. 909, 370 P.3d 49 (2016).

17         104.31        The plaintiffs' claims against CSC in *Richelle* and *Rhodes* were

18 based on the same claim as Bullis' claim against CSC in Lawsuit No. 1 for breaching an

19 employment offer letter that quoted an hourly rate.

20         104.32        On the parties' cross-motions for summary judgment in *Richelle*,

21 the Florida district court concluded that the offer letters unambiguously provided for hourly

22 wages rather than fixed salaries, and the court granted summary judgment in favor of the

23 *Richelle* plaintiffs.

24

COMPLAINT - 53

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

104.33      On the parties' cross-motions for summary judgment in *Rhodes*, the Mississippi district court concluded that the offer letters unambiguously provided for hourly wages rather than fixed salaries, and the court granted summary judgment in favor of the *Rhodes* plaintiffs.

104.34      On or about May 2, 2016, the Fourth Circuit affirmed the district courts' grant of summary judgment in favor of the *Richelle* and *Rhodes* plaintiffs, holding that the offer letters unambiguously provided for hourly wages rather than fixed salaries.

104.35      Likewise, on or about December 20, 2017, in the case *Joseph Strauch et al. v. Computer Sciences Corporation,* No. 3:14-cv-956 (JBA) (D. Conn.) ("*Strauch*"), a jury found that CSC failed to pay employees on an hourly basis; rather, CSC paid the employees a flat salary regardless of how many hours they worked. The jury's verdict required CSC to compensate the employees for their unpaid overtime hours.

104.36      On or about November 5, 2017, in Lawsuit No. 1, U.S. District Court Judge Susie Morgan issued a decision on the parties' cross-motion for partial summary judgment. Plaintiffs argued in their motion that CSC's offer letter and its Foreign Travel Letter ("FTL") unambiguously provided for an hourly rate of pay for plaintiffs' work overseas. CSC argued, in relevant part, that its offer letter and FTL should be interpreted as to provide for pay on a salary basis.

104.37      Applying Virginia law, the Louisiana Court granted plaintiffs' motion for partial summary judgment. The Court found that the offer letter and FTL, read together, unambiguously provided for an hourly rate of pay for plaintiffs' work overseas.

104.38      Thus, Bullis has proffered enough evidence to establish the underlying case could have survived a summary judgment motion because not only did the

ALANA BULLIS, PS
1911 Nelson Street
DuPont, WA  98327
Telephone (253) 905-4488
Facsimile (253) 912-4882

1  underlying case survive a summary judgment, Bullis and the other *Rose* plaintiffs prevailed on

2  their cross-motion for summary judgment against CSC.

3                                    **PRAYER FOR RELIEF**

4           Wherefore, Plaintiff Bullis respectfully requests that this Court enter judgment against

5  Defendants Michael Farrell and the Law Office of Mike Farrell, PLLC, as follows:

6           1.      For compensatory and general damages in an amount according to proof;

7           2.      For pre- and post-judgment interest on all damages as allowed by the law;

8           3.      For costs of suit incurred herein;

9           4.      For treble damages and attorney fees under the CPA; and

10          5.      Awarding such other and further relief as the Court deems equitable and just.

11                                 **DEMAND FOR JURY TRIAL**

12         Plaintiff demands a jury trial for all claims so triable.

13                                              Respectfully submitted,

14  Dated: November 15, 2021                    ALANA BULLIS, PS

15

16                                              _Alana  K. Bullis_

17                                              _____
                                                Alana K. Bullis, WSBA No. 30554
18                                              ALANA BULLIS, PS
                                                1911 Nelson Street
19                                              DuPont, WA  98327
                                                Telephone: (253) 905-4488
20                                              Facsimile: (253) 912-4882
                                                alana-akblaw@live.com

21                                              Attorney for Plaintiff

22

23

24

COMPLAINT - 55                                          ALANA BULLIS, PS
                                                         1911 Nelson Street
                                                         DuPont, WA  98327
                                                      Telephone (253) 905-4488
                                                      Facsimile (253) 912-4882