## Declaration of Mike Farrell

Pursuant to the provisions of 28 U.S.C. § 1746, I, Mike Farrell, make the following declaration under oath.

1. I have practiced law in Jackson, Mississippi for 48 years. I have been a member of the Mississippi Bar since 1974.  The focus of my practice has been employment litigation in addition to some commercial and business litigation.  Most of my practice has been concentrated in the Jackson area, but I have traveled to other federal and state courts in Mississippi and sometimes to adjoining states.

2. For the last year, I have been winding down my practice in anticipation of retiring on his 73rd birthday on September 15, 2021. However, the projected closing date is now March 31, 2022.

3. I have never been to the State of Washington, nor have I ever represented any clients in the State of Washington. But for Mr. Bullis and Ken Alford, I have never represented anybody from Washington.

4. This declaration sets forth the background on how I came to represent Guy Bullis and other plaintiffs in lawsuits filed in Louisiana and later in Virginia against Computer Science Corporation (CSC).

5. My involvement in the CSC cases started in 2013 when I was contacted by Victoria Rhodes who lives near Jackson, Mississippi.  She explained that she recently returned from Iraq where she had worked for CSC. CSC is a large defense contractor that had a DOD contract to help with the "war against terror" in Iraq, Kuwait and Afghanistan.  CSC hired many hundreds of U S citizens to work there.

6. CSC required all employees to sign a standard written employment agreement that provided for an hourly rate of $32.  CSC paid the hourly rate for the first 40 hours but required the employees to work 84 hours a week without any additional pay for the extra 44 hours.

7. Once Rhodes was back home in Mississippi, she came to see me to inquire if she had a legal claim against CSC for not getting paid the $32 an hour for all hours worked. After reviewing her contract, I advised her that she seemed to have a good claim for a breach of contract claim. Rhodes said that if the case was meritorious, three friends (also former CSC co-workers) wanted to join in any lawsuit. I filed a diversity suit for them against CSC in federal court in Jackson, Mississippi on April 10, 2013.

8. CSC mounted a vigorous defense. First, it asked the court to transfer the case to the federal court in Alexandria, Virginia, where CSC is headquartered. The federal court in Jackson granted that motion. In the meantime, another lawsuit (<u>Rishell v. CSC</u>) was filed in federal court in Florida by another former employee against CSC making the same claim. Mr. Rishell was represented by a Florida lawyer. That case was also transferred to federal court in Alexandria. The Virginia court consolidated the cases for discovery and trial.

9. As the case progressed, Ms. Rhodes and the three other plaintiffs told their former coworkers about their case. They had a lot of chatter on Facebook and emails. Rhodes and my other three clients asked if their friends could join the suit. The deadline to add parties had passed but I told them that I was contemplating filing another suit if anybody was interested. Several people sent me blocks of email addresses of the former co-workers with whom they had worked overseas. I only had email addresses, I did not have names, addresses or phone numbers.

10. After discovery, all parties filed motions for summary judgment. The district court granted summary judgment for the plaintiffs on December 10, 2014. While CSC appealed to the Fourth Circuit, I made plans to file the second suit. On January 16, 2015, I sent a solicitation email to over 150 former CSC employees inviting them to join the litigation.

11. I used the email addresses to send a solicitation email to over 150 of them. I attached an engagement agreement for them to sign and return in the event that they wanted to join the new suit.

12. At that time, I only had email addresses. I did not know where any of these former employees of CSC lived. One of the emails went to Guy Bullis. I did not know where he was at the time he received my email or signed the engagement agreement.

13. Bullis did not allege in his complaint that he was in Washington when he received my email. The second page of the engagement agreement asked for their home address and their work address if it was different. I needed their home addresses in order to plead diversity jurisdiction.

14. Bullis sent me his signed engagement listing a home address in Dupont, Washington. Before then, I had no idea where Bullis lived.

15. Before getting the signed engagement agreements, I did not have any idea where any of them lived or where they were when they received my email and signed the engagement agreement.

16. I did not target or purposefully avail myself of representing any resident of Washington or any other state.

17. I was targeting former CSC employees wherever they lived or wherever they worked at the time.

18. For purposes of alleging diversity jurisdiction, I had to ask each for their home address.

19. About 78 former CSC employees engaged my law firm to file the suit. This was a very large undertaking for me. While I had been in private practice for 39 years at that time, I had been a solo practitioner with a single secretary since 2008. The following is a list of the number of persons by state who were plaintiffs in the Rose case.

| Georgia | 16 |
|---|---|
| Texas | 12 |
| North Carolina | 11 |
| Alabama | 7 |
| Florida | 7 |
| South Carolina | 4 |
| Maryland | 3 |
| California | 2 |
| Arizona | **2** |
| **Washington** | 2 |
| American Samoa | 1 |
| Germany | 1 |

| Hawaii | 1 |
|---|---|
| Indiana | 1 |
| Louisiana | 1 |
| Mississippi | 1 |
| Nebraska | 1 |
| Oklahoma | 1 |
| Pennsylvania | 1 |
| Tennessee | 1 |
| Thailand | 1 |
| Wisconsin | 1 |
| | 78 |

20. I started to focus on Louisiana as the venue for a new lawsuit. CSC was registered to do business there. Louisiana had a very favorable statute that allowed employees seeking unpaid wages to recover an additional penalty. I also did extensive research of the doctrine of *lex fori* under which courts apply the remedies of the forum state. CSC attorneys in the Rhodes case were located in New Orleans. I was also reasonably familiar with the city.

21. I contacted Wanda Davis of the firm Leefe Gibbs law firm in Metairie, Louisiana, to act as local counsel. She was recommended to me as a lawyer experienced in employment litigation. She agreed on behalf of her firm.

22. In researching statute of limitations, I came across a list of states showing their statutes of limitations on a written contract. To my surprise, the Louisiana statute was 10 years on a written contract. I called local counsel and asked if I was reading the statute correctly. Ms. Davis replied that I was. I relied on Louisiana counsel for the appropriate statute of limitations.

23. I then proceeded to finalize the lawsuit. The named plaintiff was Steve Rose who was a resident of Louisiana. The complaint in Rose et al v. CSC was signed by the Leefe Gibbs firm and filed in the Eastern District of Louisiana in New Orleans on March 13, 2015. They then filed a motion for me to be admitted *pro hac vice*.

24. The defendant filed a motion for partial summary judgment based on a three-year statute of limitations for a written employment contract. I was not familiar with that statute. I again called local counsel who then advised me that the applicable statute on a written

*employment* contract was three years – not the ten–year statute we had discussed earlier. Again, I had relied on Louisiana counsel for purposes of the appropriate Louisiana statute of limitations. Ex. A ¶ 24. Even though the court granted the motion for partial summary judgment, the plaintiffs were still able to recover a settlement of $390,000 based on the 3-year statute of limitations.

25. In an attempt to recover the damages that had been dismissed in Louisiana, I filed a second lawsuit in Fairfax County, Virginia on October 5, 2018. Bullis was also a plaintiff in that case styled as <u>Alford et. al v. CSC</u>. The circuit court dismissed the case on procedural grounds. An appeal to the Virginia Supreme Court was not successful.

26. The undisputed acts show that I did not purposefully avail myself or seek the benefits of doing business specifically in the state of Washington.

27. Farrell came to realize that many of the plaintiffs worked for multiple defense contractors during the war years.   For example, CSC sent Bullis an offer letter in 2010 addressed to his home address in Dupont, Washington. However, the offer was sent to him by email.  He acknowledged in discovery that when he received the offer letter, he was already in Balad, Iraq.

I declare under penalty of perjury that the above statements are true and correct. Executed on January 3, 2022.

Mike Farrell